## McKEEN & BRO. v. HARWOOD.

1. H. desiring to rent a store for the year, obtains from B. & S., the respective owners of two, the refusal of them, at the prices fixed upon each, viz: B's at $1,500, and S's at $1,200; McK. & Bro. desiring also to rent one of the same stores, apply to B. & S. respectively, for that purpose, each of whom informs them of his promise to H., and declines renting to them: McK. & Bro. then call upon H., who consents to waive, in their favor, the privilege accorded to him by S., on the condition, that they will pay him, $150, it being one half the difference between the prices of the two

stores, to which they agree: H. thereupon rents, and, occupies for the year, the store of B., and McK. & Bro. rent, and occupy for the same term, the store of S.: *Held*, that the contract of McK. & Bro. is founded on a sufficient consideration to support an action thereon, instituted against them, by H.

Error to the Circuit Court of Mobile. Before the Hon. John Bragg.

THIS was an action of trespass on the case, instituted by defendant, against plaintiffs in error. By the bill of exceptions, found in the record, it appears, that Harwood applied to Sidney Smith, and John Bloodgood, to rent from them stores, respectively owned by them, and obtained from each the refusal of his store, at the price placed upon it, that is, Smith's, at $1,200, and Bloodgood's, at $1,500. McKeen & Bro. also applied to Smith and Bloodgood, for the purpose of renting, and were informed by each, that Harwood had the refusal of his store. Harwood did not bind himself to take the store of either Smith or Bloodgood. Harwood took the store of Bloodgood, and McKeen & Bro. promised him, that if he would let them take the store of Smith, the rents should be equalized between them, that is to say, that McKeen & Bro. would pay Harwood $150, it being one half the difference between the rents of the respective stores of Bloodgood and Smith. Harwood agreed to this, and each party occupied the store respectively rented by them, and paid the rent therefor. Bloodgood's store was the most valuable. Neither Bloodgood nor Smith looked to any one else, than the occupant of his store, for the rent.

The counsel of defendants requested the court to charge the jury, that if they believed the evidence, the promise of defendants was without consideration, and void; which the court refused, but charged the jury, that if the plaintiff had the refusal of the store of Smith, and waived that right in consideration of the promise of defendants, the plaintiff could recover. To the refusal to give the charge asked, and, to the charge given, the defendants excepted, and now assign them as error.

LOCKWOOD, for plaintiffs in error.

The agreement, or promise, made by Smith, giving Harwood the refusal to rent the store for $1,200 per annum, was void. There was no mutuality in the agreement. See Bennett v. Bisco, 4 Johns. R. 234; Cooper v. Oakley, 3 Term R. 653, 148; Utica R. R. Co. v. Brinkerhoff, 21 Wend. 139.

The giving the refusal to rent, was a matter of pure courtesy on the part of Smith, and exclusively personal to Harwood; hence, the refusal could not be transferred, or relinquished, by Harwood, to a third party.

The promise, or agreement, giving the refusal to rent the store by Smith to Harwood, being void, and exclusively personal, the promise by the McKeens to pay Harwood money, for the transfer, or relinquishment of said refusal, is void. There is not even a past consideration. Eble v. Judson, 26 Wend. 97.

A moral, or conscientious obligation, unconnected with any prior legal or equitable claim, is not enough to support a promise. See 3 Bos. & Pull. 249, note; Smith v. Ware, 13 Johns. 257; 16 Johns. 283, note.

An express promise is of no binding validity, when there is nothing in the original engagement, which the law regards as a legal consideration. 21 American Jurist, 276, 278.

HAMILTON, contra.

On the record, after verdict, it is to be taken, that Harwood had acquired the refusal of the stores by a valid contract. No writing was necessary: a lease for a term not longer than a year is valid, without a writing. See Clay's Dig. 505-6. Any damage or injury to the promisee, or advantage to the promissor, is a sufficient consideration. 1 Caine's R. 45; 3 Johns. R. 100; 1 Litt. R. 123; 2 Peters, 182; 8 Mass. 162, 200; 6 ib. 58; 6 Pick. 427, 432; 2 Bibb, 30. Nor is it necessary, the consideration should exist at the time of making the promise, if it arise afterwards, in consequence of the promise, it is sufficient. Train v. Gold, 5 Pick. 384; Gardiner v. Webb, 17 ib. 407; Hilton v. Southwick, 17 Maine, 303. In this case, Harwood surrendered the right, or what is the same thing, the opportunity he had, of taking the store for $1200, and assumed the payment of a higher rent of $1500,

in consequence of the promise by the McKeens.   Here was a damage to Harwood of $300.

The McKeens were also seeking to rent a store, and applied to the owners of both these stores.   Had Harwood taken the store of Smith at $1200, for aught that appears, they would have had to take the store at $1500.   This was obviated by their agreement with Harwood.   Here was a benefit to the McKeens of at least the $150 agreed to be paid, if not of $300, the difference between the rents.   The McKeens so considered it, or they would not have made the contract with Harwood.

The case of Price v. Seaman, 2 Bing. R. 437, s. c. in error, 4 Barn. & Cress. 525, in principle meets this case exactly.   It was there held, that a transfer of a contract to purchase real estate, was a sufficient consideration, to support a promise to pay money; and that a court of error could not say there was no consideration, although the contract of purchase, may have been void, by reason of being by parol only, the defendant having enjoyed the benefit of his bargain.   So in this case.   The defendant enjoyed the benefit of his agreement with Harwood, and now seeks to repudiate that agreement.

. The court will observe, that both Smith and Bloodgood, when applied to by McKeen, subsequently to the arrangement between themselves and Harwood, with regard to the renting of their respective buildings, considered themselves bound by their contract with Harwood, and declined making any contract with McKeen, because of their previous agreement with Harwood.

Harwood, then, had obtained an advantage under his agreement with these gentlemen, (to wit, that of securing the store at the smallest rent,) which he waived under his agreement with McKeen, the benefit of which they got, and in consideration of which, they made their promise to him.

It may very well happen, that Harwood may not have been bound to take the store for the whole year, after having obtained the refusal of it, and yet, have made a valid contract, by which he had the right, within a limited time, of taking the store, or of intimating his refusal.   This court

will make all proper presumptions, if it be necessary, to support the verdict below.

This action is well brought. 1 Wheat. 237; 7 Ala. 753; 2 Stew. 472; 3 Watts & Serg. 329; 4 Porter, 435, 502; 1 Wright (Ohio) 373.

The case in 4 Johns. R. 234, does not reach this case.

CHILTON, J.—It is perfectly clear, in this case, that had Harwood sued either Bloodgood, or Smith, for a refusal, on their part, to comply with the promise which they had respectively made, to him, to give him the refusal of renting the stores owned by them, at the prices stipulated, he could not have recovered ; for the promise was not only without any consideration, but wanted another essential element of a valid agreement—mutuality. And this is the gist of the decision, upon which the plaintiff in error mainly relies, in the case of Burnett v. Bisco, 4 Johns Rep. 234. In that case, there was a written promise to give the plaintiff the refusal of a farm for the term of two years, for a stipulated amount, which was to be guaranteed by good security. The plaintiff averred that he had complied, on his part, and had tendered the security, and that the defendant had refused to comply, &c. Held, that the action was not maintainable, as there was no agreement on the part of the plaintiff to take the farm, and that as nothing of value passed from him, and there was no promise on his part, to support the promise on the part of the defendant, the contract was *nudum pactum.* But it is most obvious, that the case at bar, is wholly without the influence of the principle settled by that case. Here, the parties who made the promise, to give the defendant in error the refusal of renting their stores, at the prices respectively stipulated, fully recognize their honorary obligations, in their willingness to comply with the promise they had made him. So long then, as Smith and Bloodgood chose to recognise his right to elect to rent either of the stores, McKeen and Brother, could make no lease. Thus the promise to Harwood operated to the prejudice of McKeen & Bro., to the extent of the injury which resulted from their present inability to lease. At the same time, the exclusive privilege for the time, being voluntarily awarded to Harwood, by Smith and Bloodgood, was a

benefit to him ; for it enabled him to take at his election the better bargain—not an election, the right to which, the law would have enforced, but which the proprietors of the stores were willing to accord him.

Thus viewing the condition of the parties, let us see what change the contract declared on, wrought upon their situation. After McKeen & Bro. made the agreement to take the house of Smith at $1200, and to pay Harwood $150, who was to take the store of Bloodgood at $1500, it is very clear that Harwood could not legally have rented Smith's store, to the exclusion of the plaintiffs in error ; for by the terms of the contract, in consideration of the mutual promise of McKeen & Bro. to pay him $150, he was bound not to do it. But Harwood was not only denied the election to take the house of Smith, but the plaintiffs in error were thereby enabled to conclude the contract for the house, which before that time, by reason of the promise to Harwood, they had been unable to make. There was then, in legal contemplation, not only a detriment to the promisee, but a benefit to the promisor.

It is no answer to say, that Smith was not bound to let McKeen & Bro. have the premises, at the rate at which Harwood was to have them, but could have refused altogether. The parties at the time of the contract knew of his right to reject both of them, and must be presumed to have contracted with reference to it. But Smith did not refuse to conclude the lease, and this furnishes the best evidence to show that McKeen & Bro. knew he would not. At all events, it does not lie with the plaintiffs in error to say, in the absence of all fraud, imposition or injury, we ought to be relieved from a compliance with our contract, since we *might* have been thwarted in our expectations, but we were not.

We feel satisfied, that according to the well settled rules of law, the consideration was sufficient to support the promise, and that the court below properly refused to instruct the jury to the contrary. The law is not particular in ascertaining how much of benefit to the one, or detriment to the other, of the parties, resulted from the contract, as the mere inadequacy of consideration will not render it invalid. It has been held, that a promise to pay, if a party would swear to the truth of his demand, is binding, as supported by a consid-

eration, if the party make the affidavit accordingly. 18 Johns. Rep. 337. Any damage, suspension, or forbearance of a right ; any benefit to the party promising, or prejudice, detriment, or trouble to the party to whom the promise is made, has been generally esteemed a sufficient consideration. See cases in the brief of defendants counsel—also, Jones v. Ashburnham, 4 East, 455; Lent v. Padelford, 10 Mass. 236 ; Seaman v. Seaman, 12 Wend. 381; Gillespie v. Battle, at the present term.

It is said, however, that the contract is void, as being against public policy. We are unable to see what principle of public policy is violated by it, and the counsel has not pressed the argument upon this point. It is not usual to speculate upon the courtesies gratuitously extended by friends, but there may be cases where the strictest morality will not forbid it. At most, this is a question between Smith and Harwood, and in which the plaintiffs in error have no concern. They have received all they contracted for, and should be held to a compliance with the contract.

Let the judgment be affirmed.